**Opinion issued April 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-16-00121-CV

—————————————

**TROY E. NEHLS, SHERIFF, AND FORT BEND COUNTY, TEXAS,**
**Appellants**

**V.**

**HARTMAN NEWSPAPERS, LP D/B/A FORT BEND HERALD AND**
**TEXAS COASTER,**
**Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 15-DCV-225813**

---

# O P I N I O N

Appellee Hartman Newspapers, LP d/b/a Fort Bend Herald and Texas

Coaster ("Hartman") sued appellants Sheriff Troy E. Nehls and Fort Bend County,

Texas under the Texas Public Information Act (PIA) and the Uniform Declaratory

Judgment Act (UDJA) seeking: (1) an order compelling appellants to produce identifying information about the individual who filed a complaint with the sheriff's office regarding allegations of attempted bribery made by two school district trustees; (2) a declaratory judgment that Hartman is entitled to the requested information; and (3) attorney's fees. Appellants produced the requested information and filed a plea to the jurisdiction asserting that the lawsuit was moot and should be dismissed. The trial court denied appellants' plea. On appeal, appellants argue that the trial court erred in denying their plea to the jurisdiction because: (1) Hartman's PIA claim is moot and (2) Hartman is not entitled to attorney's fees. We agree, and therefore we reverse the trial court's denial of appellants' plea to the jurisdiction and dismiss this case for lack of subject-matter jurisdiction.

**Background**

On July 31, 2015, Scott Reese Willey, Managing Editor of the Fort Bend Herald, sent a request for disclosure of documents and information relating to a bribery investigation to Bob Haenel, Public Information Officer for the Fort Bend Sheriff's Office. Willey's email stated in relevant part:

> Under the Texas Public Information Act § 6252-17a et seq., I am requesting an opportunity to inspect or obtain copies of public records that detail who requested the Fort Bend County Sheriff's Office launch an investigation into the allegations of attempted bribery made by two Lamar Consolidated Independent School

2

> District trustees during the June 18, 2015 board meeting. We specifically want to know who filed a complaint, if any, which led the sheriff's office to investigate the allegations.
>
> * * *
>
> The Texas Public Information Act requires that you "promptly produce" the requested records unless, within 10 days, you have sought an Attorney General's Opinion.

In a letter to Willey dated Thursday, August 13, 2015, Assistant County Attorney Matthew L. Grove asserted the requested records were "not subject to public disclosure because they contain information believed to be confidential and/or privileged by law." Grove wrote that Willey's request had been forwarded to the Texas Attorney General's Office for a determination as to whether the information must be released. On the same day, Grove also wrote Attorney General Paxton, asking whether certain records should be produced in response to Willey's request. Grove took the position that Section 552.108 of the Government Code applied, excepting the requested documents from disclosure. Section 552.108 of the Government Code provides:

> (a) [i]nformation held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from the requirements of Section 552.021 if: (1) release of the information would interfere with the detection, investigation or prosecution of crime; . . .
>
> (b) an internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from the requirements of section 552.021 if: (1)

3

the release of the internal record or notation would interfere with law enforcement or prosecution[.]

TEX. GOV'T CODE § 552.108.

Eight days later, before the Attorney General's office responded to Grove's letter, Hartman sued appellants seeking a writ of mandamus, declaratory relief, and a mandatory injunction under the PIA and UDJA. In its petition, Hartman stated that it sought to learn the identity of the individual who filed a complaint which led the sheriff's office to investigate the allegations of attempted bribery made by two Lamar Consolidated Independent School District trustees during the June 18, 2015 board meeting. In response, appellants emailed Hartman the first page of Offense Report 25-23901, which provided basic information related to the report of attempted bribery, including the names of the individuals who met with the sheriff's office.

In October 2015, Assistant Attorney General Cristian Rosas-Grillet responded to Grove's letter. Rosas-Grillet concluded that "the release of the information at issue would interfere with the detection, investigation, or prosecution of crime . . . . [t]hus, with the exception of basic information, which must be released, the sheriff's office may withhold the submitted information under section 552.108(a)(1) of the Government Code."

In January 2016, appellants filed a plea to the jurisdiction asserting that they had satisfied Hartman's request for information and thus mooted the case.

4

Appellants argued that Hartman (1) did not "substantially prevail" because the controversy was moot and thus, Hartman was not entitled to attorney's fees under the PIA and (2) was not entitled to costs of litigation or attorney's fees under the UDJA because its UDJA claim was merely incidental to Hartman's claim for relief under the PIA.

At the hearing on appellants' plea to the jurisdiction, Hartman presented two witnesses: Fred Hartman, the vice chairman of the board of Hartman Newspapers, and Bill Hartman, the chairman of Hartman Newspapers. Both acknowledged that Hartman had received the information that was the subject of the PIA request, but contended that the information should have been disclosed without the need for a decision from the Attorney General. Bill Hartman testified that, though Hartman had never filed suit before, Hartman had problems obtaining information from the sheriff's office from time to time over the years. He testified that he was concerned that the county would repeatedly delay disclosing information in the future.

After the trial court denied their plea, Fort Bend County and Sheriff Nehls appealed.

## Plea to the Jurisdiction

In their sole issue, appellants contend that the trial court erred in denying their plea to the jurisdiction because (1) Hartman's PIA claim is moot and (2) Hartman is not entitled to attorney's fees under the PIA or the UDJA.

### A.    Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Harris Cty. Appraisal Dist. v. Integrity Title Co.*, 483 S.W.3d 62, 65 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).  The existence of subject-matter jurisdiction is a question of law that we review *de novo*.  *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex. 2002); *Harris Cty*., 483 S.W.3d at 65.  When a plea to the jurisdiction "'challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Tex. Dep't & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)).  If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as

a matter of law. *Miranda,* 133 S.W.3d at 228; *Kamel v. Univ. of Tex. Health Sci. Ctr.,* 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

## B.    Applicable Law

### 1.    Mootness Doctrine

"The mootness doctrine limits courts to deciding cases in which an actual controversy exists." *Hous. Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396, 399 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *F.D.I.C. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Kessling v. Friendswood Indep. School Dist.*, 302 S.W.3d 373, 380 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183 (1982)). If a case becomes moot, the court loses jurisdiction over the claims. *Id.*

The Texas Supreme court has recognized two exceptions to the mootness doctrine: (1) the capability of repetition yet evading review exception and (2) the collateral consequences exception. *General Land Office of State of Tex.*

7

*v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990). "Capable of repetition yet evading review" is a rare exception to the mootness doctrine. *Tex. A & M Univ.-Kingsville v. Yarbrough,* 347 S.W.3d 289, 290 (Tex. 2011) (citing *Williams*, 52 S.W.3d at 184). To invoke this exception, a party must establish both (1) that the challenged act is of such short duration that the issue becomes moot before review may be obtained, and (2) that a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Williams*, 52 S.W.3d at 184–85; *OXY U.S.A.,* 789 S.W.2d at 571.

## 2. Public Information Act

Under the PIA, upon a request for public information, a governmental body's officer for public records must promptly produce public information for inspection, duplication, or both. *See* TEX. GOV'T CODE § 552.221. Public information is any information which, under a law or ordinance or in connection with the transaction of official business, is collected, assembled or maintained by a governmental body; or for a governmental body and the governmental body owns the information or has a right of access to it. TEX. GOV'T CODE § 552.002; *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

If a governmental body receives a written request for information that it wishes to withhold from public disclosure and believes is excepted from disclosure under the PIA, within ten days of receipt of the written request, the governmental

8

body must ask for a decision from the attorney general about whether the information may be withheld. *See* TEX. GOV'T CODE § 552.301(a). "Unless the information requested is confidential by law, the governmental body may disclose the requested information to the public or to the requestor before the attorney general makes a final determination that the requested information is public or, if suit is filed under this chapter, before a final determination that the requested information is public has been made by the court with jurisdiction over the suit." TEX. GOV'T CODE § 552.303(a).

Section 552.321 of the PIA waives sovereign immunity and allows a requestor to file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure. TEX. GOV'T CODE § 552.321(a). However, "the legislature has not addressed or provided a waiver of sovereign immunity as to a claim that is based on a governmental body's delay or its motives for delaying the release of information that is subject to disclosure under the PIA." *Gates v. Texas Dep't of Family and Protective Servs.*, No. 03-15-00631-CV, 2016 WL 3521888, at *4 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.).

In an action brought under the PIA, "the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails." TEX. GOV'T CODE § 552.323(a). The Texas Supreme Court has held that to qualify as a "prevailing party," a plaintiff must obtain (1) judicially sanctioned relief on the merits of its claim that (2) materially alters the legal relationship between the parties such as a damages award, injunctive or declaratory relief, or consent decree or settlement in the party's favor. *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653–55 (Tex. 2009). Several courts of appeals in Texas have held that a requestor whose PIA claim is rendered moot by the voluntary production of documents by a governmental body does not "substantially prevail" under the PIA. *See Gates*, 2016 WL 3521888, at *7–8; *Hudson v. Paxton*, No. 03-13-00368-CV, 2015 WL 739605, at *3–5 (Tex. App.—Austin Feb. 20, 2015, pet. denied) (mem. op.); *Brazee v. City of Spur,* No. 07-12-00405-CV, 2014 WL 2810339, at *3 (Tex. App.—Amarillo June 10, 2014, no pet.) (mem. op.); *Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 703–06 (Tex. App.—Austin 2013, no pet.); *Dall. Morning News, Inc. v. City of Arlington,* No. 03-10-00192-CV, 2011 WL 182886, at *3–4 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.); *City of Dall. v. The Dall. Morning News, L.P.*, 281 S.W.3d 708, 718 (Tex. App.—Dallas 2009, no pet.).

### 3. Uniform Declaratory Judgment Act

"There are two prerequisites for a declaratory judgment action: (1) there must be a real controversy between the parties and (2) the controversy must be one that will actually be determined by the judicial declaration sought." *Thomas*, 196 S.W.3d at 401 (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004)). A request for declaratory judgment is moot "if the claim presents no live controversy." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (quoting *Yarborough*, 347 S.W.3d at 290). "A controversy ceases to exist when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Bd. of Tr. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Williams,* 52 S.W.3d at 184). If a case becomes moot, the plaintiff loses standing to maintain his claims. *Id.* at 236–37 (citing *Williams,* 52 S.W.3d at 184).

"[T]he Declaratory Judgment Act does not empower a court to render an advisory opinion or to rule on a hypothetical fact situation." *Thomas*, 196 S.W.3d at 401 (citing *Brooks*, 141 S.W.3d at 164). "An advisory opinion is one which does not constitute specific relief to a litigant or affect legal relations." *Id.* (quoting *Lede v. Aycock*, 630 S.W.2d 669, 671 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)).

## C.     Analysis

Appellants contend that the trial court erred in denying their plea to the jurisdiction with regard to Hartman's PIA claim because this claim and the related claim for attorney's fees were rendered moot as a result of appellants' production of the requested information.  Hartman admits that appellants provided Hartman with the information it requested six days after it filed suit.  And the Attorney General later concluded that Hartman was not entitled to receive the information that the sheriff had not provided.  Thus, appellants' release of information eliminated the justiciable controversy that formed the basis of Hartman's PIA claim.  *Gates*, 2016 WL 3521888, at *5 (concluding PIA claim moot by Department's release of requested information); *Giggleman*, 408 S.W.3d at 704–06 (holding plaintiff's PIA claim mooted by Board's production of requested information); *Dall. Morning News, Inc.,* 2011 WL 182886, at *3–4 (holding PIA controversy moot where City voluntarily released requested document).

Hartman does not dispute that the sheriff's production of information mooted its substantive request for relief, but it does assert that the production of information did not moot its request for attorney's fees under the PIA.  Hartman argues it is entitled to a fee award and, accordingly, a "live" controversy remains. In the alternative, Hartman asserts that the "capable of repetition yet evading review" exception to the mootness doctrine applies.  Finally, Hartman contends

that even if the production of documents mooted its PIA claim, its UDJA claim survives and may serve as a basis for a fee award. We address each of these arguments in turn.

### 1. Attorney's Fees Under the PIA

Appellants argue that Hartman's claim for attorney's fees under the PIA was mooted by appellants' voluntary production of the requested documents. Hartman argues its claim for fees is not moot because there is a "live" issue regarding whether it "substantially prevailed."

Hartman concedes that both the Austin and Dallas courts of appeals have held that a plaintiff does not "substantially prevail" under the PIA when a governmental body voluntarily releases information and the record does not reflect an enforceable judgment or a consent decree or settlement. *See Gates*, 2016 WL 3521888, at *7–8 (plaintiff did not "substantially prevail" under PIA where record did not reflect an enforceable judgment against defendant, a consent decree, or settlement and defendant voluntarily released information sought); *Hudson*, 2015 WL 739605, at *3–4 (noting that to "substantially prevail" under PIA, party must, at a minimum, "prevail" as that term is defined by the Supreme Court in *KB Home*); *Giggleman*, 408 S.W.3d at 705 (holding that it became impossible for plaintiff to satisfy PIA's "substantially prevail" requirement once his mandamus claim was mooted by Board's production of requested information); *Dall. Morning*

*News, Inc.*, 2011 WL 182886, at *3 (holding plaintiff did not "substantially prevail" where City voluntarily released requested document); *City of Dall.*, 281 S.W.3d at 718 (holding that there was no prevailing or substantially prevailing party where there was no final judgment); *see also Brazee,* 2014 WL 2810339, at *3 (holding requestor does not substantially prevail under PIA where claim rendered moot by voluntary action of governmental body prior to entry of final judgment). However, Hartman urges us to reject these courts' analysis, asserting that it is "fundamentally flawed."

Instead, Hartman urges us to adopt the "catalyst theory" relied upon by some federal courts to determine whether attorney's fees are warranted. In support, Hartman relies on federal cases interpreting the phrase "substantially prevailed" in the context of the federal Freedom of Information Act ("FOIA"). Generally, these cases from the 1970s and 1980s held that a plaintiff "substantially prevailed" for the purpose of awarding attorney's fees under FOIA where the plaintiff's lawsuit was the catalyst to the government's disclosure of requested information.

Federal courts previously recognized the catalyst theory as a viable theory of recovery of attorney's fees under the FOIA. *See e.g.*, *Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1389 (8th Cir. 1985); *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 489–92 (9th Cir. 1983); *Clarkson v. Internal Revenue Serv.*, 678 F.2d 1368, 1371 (11th Cir. 1982); *Cazaleas v. U.S. Dept. of Justice*, 660 F.2d

14

612, 622 (5th Cir. 1981). The catalyst theory posits that, to qualify as prevailing for the purpose of an attorney's fees award, a party must "show (1) that the relief sought by the plaintiff was in fact obtained, and (2) that the suit itself caused the defendant to alter its conduct.'" *Envtl. Conservation Org. v. City of Dall.*, 307 Fed. Appx. 781, 785 (5th Cir. 2008) (quoting *Foreman v. Dall. Cty.*, 193 F.3d 314, 320 (5th Cir. 1999)). But the Supreme Court unequivocally rejected the application of the "catalyst theory" in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources.* 532 U.S. 598, 605–08, 621 S. Ct. 1835, 1841–42 (2001).

In *Buckhannon*, the petitioners argued that they were entitled to attorney's fees as "prevailing parties" after the underlying controversy in the case was mooted. *Id*. at 601–602. The Court rejected the petitioners' argument that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. *Id*. at 605–08. Specifically, the Supreme Court held that its precedents "counsel[ed] against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Id* at 605; *see also Oil, Chem. & Atomic Workers Int'l Union AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 454–57 (D.C. Cir. 2002) (confirming that *Buckhannon* applied to FOIA cases and that to be eligible for attorneys' fee award, party must

15

have been "awarded some relief by [a] court," either in judgment on merits or in court-ordered consent decree). The Fifth Circuit has declined to apply the "catalyst theory" as a basis for an award of attorney's fees, holding instead that where the plaintiff obtained no court-ordered relief modifying the defendant's behavior, it was not a "substantially prevailing party." *Envtl. Conservation Org.*, 307 Fed. Appx. at 784. Several Texas courts have similarly rejected the application of the "catalyst theory" when deciding whether a party has "substantially prevailed" under the PIA, instead applying the two-part "prevailing party" test articulated in *KB Home*. *See Hudson*, 2015 WL 739605, at *3–4; *Brazee,* 2014 WL 2810339, at *3; *Giggleman*, 408 S.W.3d at 703–06; *Dall. Morning News*, 2011 WL 182886, at *3–4.

In support of Hartman's contentions, an amicus in this case argues that this Court reached a different conclusion in *City of Houston v. Kallinen*, — S.W.3d —, No. 01-12-00050-CV, 2017 WL 769904 (Tex. App.—Houston [1st Dist.] Feb. 28. 2017, no pet.) (op. on reh'g). Although the *Kallinen* panel concluded that the plaintiff in that case did substantially prevail, *Kallinen* is distinguishable on its facts. *Id*. at *1. In that case, Kallinen requested disclosure of information regarding a traffic-light camera study. *Id*. The City granted part of the request, but withheld other documents while it sought the Attorney General's opinion about whether they were subject to disclosure. *Id*. Before the Attorney General ruled,

16

the plaintiff sued for mandamus relief. *Id.* The City filed a plea to the jurisdiction, contending that the trial court lacked jurisdiction until the Attorney General ruled. *Id.* The trial court overruled the City's plea, granted the plaintiff's motion for summary judgment, ordered disclosure of many of the withheld documents, and awarded the plaintiff attorney's fees. *Id.* The City disclosed the information in accordance with the trial court's order but appealed the fee award. *Id.*

This Court reversed, holding that the trial court lacked jurisdiction to consider the plaintiff's claim before the Attorney General rendered a decision. *Id.* The Supreme Court, in turn, reversed and remanded. *Id.* On remand, the City contended for the first time that the case was moot because the City voluntarily provided the requested documents before the trial court signed its final judgment. *Id.* at *2. Our Court concluded that, although the City argued otherwise, the record showed that the City's production came only after it was ordered by the trial court. *Id.* at *2–3 (distinguishing *Giggleman* and noting that final judgment in *Giggleman* did not compel disclosure of requested information). Our Court noted that the trial court's amended final judgment expressly ruled that the documents withheld by the City were public information, compelled their disclosure, and declared Kallinen a "prevailing party" under the statute. *Id.* at *3.

Unlike in *Kallinen*, here, the trial court did not order disclosure of documents. Rather, appellants voluntarily produced the requested information six

17

days after Hartman filed suit, rendering Hartman's PIA claim moot. Because Hartman did not receive judicially sanctioned relief on the merits as required under *KB Home* and as the *Kallinen* plaintiff did, it did not substantially prevail so as to recover attorney's fees. *See Giggleman*, 408 S.W.3d at 703–06; *Dall. Morning News, Inc.,* 2011 WL 182886, at \*3–4. Accordingly, there is no "live" issue regarding whether Hartman is entitled to attorney's fees under the PIA. *See Hudson*, 2015 WL 739605, at \*3–5 (concluding that trial court correctly ruled plaintiff was not entitled to award of attorney's fees because he did not "substantially prevail" where production of documents rendered controversy moot); *Brazee,* 2014 WL 2810339, at \*3 (plaintiff did not "substantially prevail" because her PIA claim was rendered moot before entry of final judgment, thereby rendering her related attorney's fees claim moot). Because appellants' disclosure rendered Hartman's PIA claim and its related attorney's fees claim moot, the trial court erred in denying appellants' plea to the jurisdiction with regard to Hartman's PIA claim unless an exception to the mootness doctrine applies. *See Gates*, 2016 WL 3521888, at \*4–8 (affirming grant of plea to jurisdiction where party's UDJA and PIA claims were moot); *Giggleman*, 408 S.W.3d at 704–09 (dismissing plaintiff's claims for attorney's fees under UDJA and PIA for want of subject-matter jurisdiction after production of documents rendered controversy moot).

18

### 2. Capable of Repetition Yet Evading Review Exception to Mootness Doctrine

Hartman contends that this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine. In support of this contention, Hartman cites *Click v. Tyra*, an original mandamus proceeding arising from the appeal of an asbestos case that was tried before a jury. 867 S.W.2d 406, 407 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding). In *Click*, the relators timely perfected their appeal by filing a cash deposit of one-thousand dollars in lieu of an appeal bond. *Id.* They also filed a designation of transcript with the District Clerk's office. *Id.* The District Clerk subsequently told the relators they would have to pay $150 for the transcript to be prepared. *Id.* The relators protested that their cash deposit covered such fees and filed a writ of mandamus to compel the District Clerk to prepare the transcript. *Id.* During the pendency of the mandamus proceeding, the District Clerk filed the transcript and argued that the mandamus proceeding was moot. *Id.* at 408. The Court of Appeals noted that it had to address the issue rather than treat it as moot because it had received several Amicus Curiae briefs advising the court that the issue presented was a recurring problem and the briefs filed by the District Clerk reflected a continuing belief that she was acting with clear legal authority. *Id.* at 408–09. The *Click* court held that the "capable of repetition yet evading review" exception to the mootness doctrine applied because the complained–of act was a recurring practice of such a short

19

duration that an appellant could not obtain review before the issue became moot and the briefs of the District Clerk reflected that she would not willingly change her course of conduct. *Id.* at 409.

Unlike the relators in *Click*, Hartman has offered no evidence or support for the notion that appellants have a policy or practice of routinely withholding discoverable public information such that it is a "recurring problem." Hartman's bare contention that there is a possibility of a future violation by appellants does not establish that a reasonable expectation exists that Hartman will be subjected to the same action again.[1] *See, e.g.*, *Thomas*, 196 S.W.3d at 403 (holding that there was no live controversy or evidence to support a public interest exception to the mootness doctrine where there was no evidence that the defendant had a "de facto policy of stonewalling the press" or that the act was of a "recurrent character"). Thus, this case does not fall under the "capable of repetition yet evading review" exception to the mootness doctrine.

---

[1] Hartman also cites *Newport Aeronautical Sales v. Dept. of Air Force* in support of its argument regarding the application of the "capable of repetition yet evading review" exception to the mootness doctrine. 684 F.3d 160, 162–64 (D.C. Cir. 2012). But the *Newport* court determined that the government had a policy or practice that would impair a requestor's access to public information in the future and that there was evidence that the plaintiff would continue to suffer injury in the future because the challenged policy permitted the Air Force to withhold documents that the plaintiff continually requested. *Id.* Hartman, by contrast, fails to present any evidence that Sheriff Nehls or Fort Bend County have a policy or practice of withholding the type of information that was the subject of Hartman's PIA request or that there is a reasonable expectation Hartman will be subjected to the same action in the future. Thus, *Newport* is also inapposite.

20

### 3.    UDJA

Our determination that Hartman's PIA claim is moot leaves the UDJA as the only remaining basis on which Hartman could be entitled to attorney's fees. Appellants contend that Hartman's UDJA claim is moot and Hartman is not entitled to attorney's fees under the UDJA because this claim is merely incidental to its PIA claim. We agree.

The evidence demonstrates, and Hartman concedes, that the substantive issue giving rise to the lawsuit has been resolved—specifically, Hartman has received the information it sought under the PIA. Thus, there is no need to enter a declaratory judgment to the effect that Hartman is entitled to the requested information. No justiciable controversy would be resolved by such a declaration. *See Gates*, 2016 WL 3521888, at *6; *Thomas*, 196 S.W.3d at 401. Hartman is not entitled to attorney's fees under the UDJA because its claim for declaratory relief is merely incidental to, i.e., it seeks the same relief as, its central theory of relief arising under the PIA.[2]  *See Jackson v. State Office of Admin. Hearings*, 351

---

[2]    Appellants also contend that Hartman's UDJA claim is barred because Hartman does not seek a declaration that comes within the UDJA's limited waiver of immunity. "In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Given our conclusion that the trial court lacks subject-matter jurisdiction over Hartman's UDJA claim because there is no "live" controversy, we need not address whether this claim is also barred by sovereign immunity.

S.W.3d 290, 3001 (Tex. 2011) ("[A]n award of attorney's fees under the [UDJA] is unavailable if the claim for declaratory relief is merely incidental to other claims for relief."); *Gates*, 2016 WL 3521888, at \*7 (quoting *Jackson,* 351 S.W.3d at 301).

## Conclusion

Hartman's claims under the PIA and UDJA are moot. Accordingly, we sustain appellants' sole issue. We reverse the trial court's order denying appellants' plea to the jurisdiction, and render judgment granting Sheriff Nehls's and Fort Bend County's plea to the jurisdiction and dismissing the case with prejudice for lack of subject-matter jurisdiction.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Publish. TEX. R. APP. PROC. 47.2(b).